## Case No. 12,553.

SCOVILLE v. TOLAND et al.

[6 West. Law J. 84; Cox, Manual Trade-Mark Cas. 51.]

Circuit Court, D. Ohio. Sept., 1848.

COPY-RIGHT—MATTER EMBRACED—LABELS—FEDERAL JURISDICTION.

1. The copy-right act [of 1831 (4 Stat. 436)] embraces not only a book in its popular acceptation, but one or more sheets which contain original matter. Even one page may contain matter which required much mental effort.

[Cited in Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 732; Littleton v. Oliver Ditson Co., 62 Fed. 599.]

2. But labels used on vials and bottles to designate certain medicines, and the diseases cured by their use, are not books, within the meaning of the copy-right act. They are of no value except as labels for which they are designed. Their publication could, by no possibility, injure the writer or author of the labels.

[Cited in Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 732.]

3. If falsely applied to medicine, with the view to impose upon the public, and injure the inventor of the medicine, chancery will enjoin.

4. The circuit court cannot inquire in such a case, when both parties live in the same state.

5. Under the new patent law, the new medicine may be protected.

[This was an application by A. L. Scoville for an injunction against Toland and Clinton.]

Mr. Norton, for complainant.

Mr. Mitchell, for defendants.

McLEAN, Circuit Justice. This is an application for an injunction in a case of copyright. The complainant represents that he is the author of a certain book termed a label, entitled and containing the words "Doctor Rodgers' Compound Syrup of Liverwort and Tar. A safe and certain cure for consumption of the lungs, spitting of blood, coughs, colds, asthma, pain in the side, bronchitis, whooping-cough, and all pulmonary affections. The genuine is signed Andrew Rodgers," which he entered in 1847 in the clerk's office of the district court of the United States for the district of Ohio, and in every other respect complied with the requirements of the law. That he had a large number of labels printed and used on bottles containing said medicinal preparation, from which he might and would have derived to himself great profit, but for the combined and illegal acts of the defendants, who, without his assent, caused to be published labels exactly similar to that which is above stated, except the omission of A. L. Scoville, which they have affixed to bottles containing a certain medicinal preparation, which they induce the public falsely to believe is the same as that prepared by the plaintiff. The medicine prepared by the plaintiff is proved to be efficacious in diseases, by the affidavits of several persons. No answer has been filed by the defendants. They insist that the label, the whole of which is above stated, is not a subject of copy-right.

The first section of the copy-right act of 1831 provides that, "the author or authors of any

book or books, &c., shall have the sole right and liberty of printing, re-printing, publishing and vending, such book or books," &c. In the sixth section it is declared that "if any person shall, after the title of any book is recorded, &c., within the term of the right granted, print, publish or import a copy of any such book or books, without the consent of the author, he shall forfeit and pay," &c. Is this label a book within the meaning of the statute? It clearly is not within the ordinary acceptation of the term "book." And the argument is not without force that the word as used in the statute must be taken in its popular signification, rather than according to its original meaning. A book, in its popular sense, is understood to be a volume bound or unbound, written or printed. The term is derived from the Saxon word "boc," a beech tree. The Latin word "liber," book, signifies primarily bark, the bark being used to write on, before paper was invented. But the true meaning of the word "book" must be found, in the language and policy of the statute, and the judicial construction which has been given to it. The English statute is similar to ours. That a printed volume, whether it contain many or few pages, is a book no one denies. But in Clementi v. Goulding, 2 Camp. 25, 32, and 11 East. 244, it was held that a composition on a single sheet might well be a book within the meaning of the legislature. Any other construction than this, it is said, would not embrace the papers of the "Spectator," or "Gray's Elegy in a Country Church Yard," they having been published in sheets. The Horn Book, known so extensively as the Infant's Book, consists of one small page. Lord Eldon in the case of Hogg v. Kirby, 8 Ves. 220, said "As to copy-right, I do not see why, if a person collects an account of natural curiosities, and such articles, and employs the labor of his mind by giving a description of them, that is not as much a literary work as many others, that are protected by injunction and by action." By St. 5 & 6 Vict. (1842) c. 45, it is provided, that the word "book" "shall be construed to mean and include every volume, part or division of a volume, pamphlet, sheet of letter-press," &c. But it seems that prior to this statute the act had been so construed. If a single page shall constitute a book within the statute, it is difficult to say that such page must contain a certain number of lines or sentences. A few lines or many thrown together without an object, and without the expression of a distinct idea, could not be called a book within the statute. Much mental labor may be concentrated on a single page, and it is supposed that no page which does not contain mental effort can be within the statute. It must be complete in itself, where a page is held to be a book, disconnected with other pages. The label which the complainant claims to be a book, refers to a certain medicinal preparation and was designed to be an accompaniment of it. Like other labels, it was intended for no other use than to be pasted on the vials or bottles which contained the medicine. As a composition distinct from the medicine it can be of no value. It asserts a fact that "Doctor Rodgers' Compound Syrup of Liverwort and Tar," is a certain cure for many diseases, but it does not inform us how the compound is made. In no respect does this label differ from the almost numberless labels attached to bottles and vials containing medicines, and directions how they shall be taken. Now these are only valuable when connected with the medicine. As labels they are useful, but as mere compositions, distinct from the medicine, they are never used or designed to be used. This is not the case with other compositions which are intended to instruct and amuse the reader, though limited to a single sheet or page. Of this character would be lunar tables, sonata, music, and other mental labors concentrated on a single page.

The complainant says that the label is falsely applied to a certain medicine, which induces the public to purchase it as the genuine syrup of Doctor Rodgers, which must not only lessen the sale of the genuine medicine, but bring it into discredit and destroy its value. If the label is thus used to practise a fraud upon the public to the injury of the plaintiff, there can be no doubt, that a court of chancery exercising a general jurisdiction, would restrain the aggressor. The injury to the party, in bringing into disrepute the genuine medicine, would be irremediable, and would therefore be a proper case for an injunction. But the circuit court of the United States cannot take jurisdiction on this ground, where both the parties live in the same state. It is the application made of the label, and not its re-publication, which constitutes the injury. As a label, without the application, it could be of no value to the defendant, as no one would purchase it. It might, if circulated, possibly attract the attention of the public to the medicine, and in that respect might be beneficial to the plaintiff. In fact the medicine is so inseparably connected with the label, that the latter is only valuable to identify the former. If the compound syrup be a new invention and is valuable, under the patent law, the rights of the inventor can be amply secured. But if the defendants were enjoined from using the label, it would not restrict them, no patent having been obtained by the plaintiff, from the use of the medicine. And if the compound be the same they would have a right to use it, until patented, and to describe it as the same compound as the plaintiff's. Still if the label be a book within the statute, the plaintiff is entitled to an injunction. Every label identifies the medicine, and when it is of modern invention, the remarkable cures performed by its use are stated. Are all such labels books, and are they the proper subjects of copy-right? If the principle be applied to one label, it must embrace all similar in character. It appears to me that the statute will not bear this construction. The injunction is refused.