## LITTLETON et al. v. OLIVER DITSON CO.

(Circuit Court, D. Massachusetts. August 1, 1894.)

### No. 3,065.

COPYRIGHT—MUSICAL COMPOSITIONS—MANUFACTURE IN UNITED STATES.

The proviso in section 3 of the copyright act of March 3, 1891, that "in the case of a book, photograph, chromo, or lithograph," the two copies required to be delivered to the librarian of congress shall be manufactured in this country, does not include musical compositions published in book form, or made by lithographic process.

This was a suit by Alfred H. Littleton and others against the Oliver Ditson Company for infringement of copyrights.

Lauriston L. Scaife, for complainants.

Chauncey Smith and Linus M. Child, for defendant.

COLT, Circuit Judge. This case raises a new and important question under the copyright act of March 3, 1891 (26 Stat. 1106). The plaintiffs, subjects of Great Britain, and publishers of music, have copyrighted three musical compositions, two of which are in the form of sheet music, and one (a cantata) consists of some 90 pages of music bound together in book form, and with a paper cover. Two of these pieces were printed from electrotype plates, and one from stone by the lithographic process. The inquiry in this case is whether a musical composition is a book or lithograph within the meaning of the proviso in section 3 of the act, which declares that in the case of a "book, photograph, chromo, or lithograph" the two copies required to be deposited with the librarian of congress shall be manufactured in this country.

The act of March 3, 1891, is an amendment of the copyright law then existing. The principal change made is the extension of the privilege of copyright to foreigners by the removal of the restriction of citizenship or residence contained in the old law, and hence it is sometimes called the "International Copyright Act". Section 1 relates to the subject-matter of copyright, and declares that:

"The author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, statue, statuary, * * * shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing," etc.

Section 3 recites the conditions which must be complied with, and says:

"No person shall be entitled to a copyright unless he shall, on or before the day of publication in this or any foreign country, deliver at the office of the librarian of congress, or deposit in the mail within the United States, addressed to the librarian * * * a printed copy of the title of the book, map,

chart, dramatic or musical composition, engraving, cut, print, photograph, or chromo, or a description of the painting, drawing, statue, statuary, * * * for which he desires a copyright, nor unless he shall also, not later than the day of the publication thereof in this or any foreign country, deliver at the office of the librarian * * * or deposit in the mail within the United States, addressed to the librarian * * * two copies of such copyright book, map, chart, dramatic or musical composition, engraving, chromo, cut, print, or photograph, or in case of a painting, drawing, statue, statuary, model, or design for a work of the fine arts, a photograph of same: provided, that in the case of a book, photograph, chromo, or lithograph, the two copies of the same required to be delivered or deposited as above shall be printed from type set within the limits of the United States, or from plates made therefrom, or from negatives, or drawings on stone made within the limits of the United States, or from transfers made therefrom."

From the language of these provisions it seems clear that "book" was not intended to include "musical composition". In the section which enumerates the things which may be copyrighted, "musical composition" is mentioned as something different from "book", and we find this same distinction twice observed in the preceding part of the section which contains the proviso. It is as reasonable to suppose that "book" and "musical composition" were as much intended to refer to different subjects as "map, chart, engraving," and other enumerated articles.

If congress, in the proviso, had intended to include a musical composition among those copyrighted things which must be manufactured in this country, it should have incorporated it in the list of things subject to this restriction. The omission in the proviso of "musical composition", as well as of "map, chart, engraving", and other things before enumerated, is very significant, as indicating that congress never intended to extend this provision to any of these articles. And so, with respect to "lithograph", if congress had intended to cover by that word a musical composition made by the lithographic process it should have expressed its meaning in clear and unambiguous terms, in view of the language used in other portions of the statute.

If there is any doubt as to the meaning of the statute, it is proper to examine the history of legislation on this subject, in order, if possible, to discover the intent of congress. As the bill passed the house of representatives, this proviso was limited to "book", but when it reached the senate an amendment was offered and passed extending the proviso to various other subjects of copyright, as "map, dramatic or musical composition, engraving, cut, print," etc. A conference committee was appointed, and a compromise was agreed to enlarging the house provision by the addition of "photograph, chromo, or lithograph", and the bill was finally passed in this form. In the debate in the senate, reference was made to the fact that musical compositions had been eliminated from the proviso. The first and fundamental rule in the interpretation of statutes is to carry out the intent of the legislature, if it can be ascertained, and I think an examination of the proceedings in congress shows that it was intended to exclude musical compositions from the operation of this proviso. 22 Cong. Rec. pt. 1, p. 32; pt. 3, pp. 2378, 2836; pt. 4, p. 3847.

"Book" has been distinguished from "musical composition" in the statutes relating to copyright since 1831. (4 Stat. 436.) The specific designation of any article in an act or series of acts of congress requires that such article be treated by itself, and excludes it from general terms contained in the same act or in subsequent acts. Potter's Dwarris on Statutes, pp. 198, 272; Homer v. The Collector, 1 Wall. 486; Arthur v. Lahey, 96 U. S. 112; Arthur v. Stephani, Id. 125; Victor v. Arthur, 104 U. S. 498. If, in a popular sense, and speaking particularly in reference to form, "book" may be said to include a musical composition, the answer to this proposition is that where two words of a statute are coupled together, one of which generically includes the other, the more general term is used in a meaning exclusive of the specific one. Endl. Interp. St. § 396; Reiche v. Smythe, 13 Wall. 162. The reasoning upon which this rule of specific designation is based is that such designation is expressive of the legislative intention to exclude the article specifically named from the general term which might otherwise include it. Smythe v. Fiske, 23 Wall. 374, 380; Reiche v. Smythe, 13 Wall. 162, 164. The English cases cited by the defendant to the effect that "book" includes "musical composition" are not material in the present controversy, because the statute law of the two countries is different. The early English statute of 8 Anne, c. 19, says, in the preamble, "books and other writings", while, in the modern English statute 5 & 6 Vict. c. 45, § 2, "book" is defined to include various specific things, as "map, chart, sheet of music," etc. Nor do the American cases cited, Clayton v. Stone, 2 Paine, 382, Fed. Cas. No. 2,872; Scoville v. Toland, 6 West. Law J. 84, Fed. Cas. No. 12,553; Drury v. Ewing, 1 Bond, 540, Fed. Cas. No. 4,095, help the defendant. In none of these cases has the question ever been determined whether a musical composition is a book. It must also be remembered that the question now presented is not strictly whether a musical composition can ever be regarded as a book, but whether congress meant in the act of March 3, 1891, to include musical composition within the terms of the proviso referred to. Nor do I think the dictionary definitions of "book" render us much assistance, because the word is used in so many different senses. It may refer to the subject-matter, as literary composition; or to form, as a number of leaves of paper bound together; or a written instrument or document; or a particular subdivision of a literary composition; or the words of an opera, etc.

Looking at the natural reading of the statute, the intent of congress, and the rules which govern the construction of statute law, I am of opinion that the plaintiffs have complied with the provisions of the act of March 3, 1891, respecting the three musical compositions complained of and that the defendant should be enjoined from reprinting, publishing or exposing for sale these compositions, or any essential part of them, as prayed for in the bill.

Injunction granted.