HERVIEU v. J. S. OGILVIE PUB. CO.

(Circuit Court, S. D. New York. March 23, 1909.)

COPYRIGHTS (§ 28*) — PROCEEDINGS TO OBTAIN — DRAMATIC COMPOSITION — DEPOSIT OF COPIES—"BOOK."

Rev. St. § 4956, as amended in 1891 (U. S. Comp. St. 1901, p. 3407), after enumerating the things which may be copyrighted, provides that the person desiring a copyright shall deposit with the librarian of Congress "two copies of such copyright book, map, chart, dramatic or musical composition, engraving, chromo, cut, print or photograph, or in case of a painting, drawing, statue, statuary, model or design for a work of the fine arts, a photograph of same; provided that in the case of a book, photograph, chromo or lithograph, the two copies of the same required to be delivered or deposited as above shall be printed from type set within the limits of the United States or from plates made therefrom. * * *"

Held, that dramatic compositions, being twice enumerated in the body of the section separately from books, and not being specified in the proviso, are not included therein, and that such a composition, although printed in book form, need not be printed from type set or plates made in the United States to be entitled to copyright.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 1, pp. 836–838.]

In Equity. The basis of this suit is an alleged infringement of a copyright of a dramatic composition. Counsel in this case are to be commended for their industry and fairness in reducing the evidence taken to an agreed statement of facts, which is as follows:

Paul Hervieu, the complainant herein, a well-known dramatist and man of letters, was at the time of the commencement of this suit, and still is, an alien of the United States of America and a citizen and resident of the Republic of France, and at the time of the commencement of this suit the defendant was, and still is, a resident, inhabitant, and citizen of the state of New York, United States of America.

In 1903 the said complainant composed and created an original play or dramatic composition in five acts in the French language entitled "Le Dédale."

On December 24, 1903, Cornelius Van Cott, the then postmaster of New York City, made the following certificate: "Post Office, New. York, N. Y., December 24th, 1903. Received from Paul Hervieu one package addressed to 'Librarian of Congress, Washington, D. C.,' containing copyright title in the following words, 'Le Dédale piece en cinq actes per Paul Hervieu ;' and also one package addressed to 'Librarian of Congress, Washington, D. C.,' containing two complete printed copies of the dramatic composition bearing said title. C. Van Cott, Postmaster." The said title referred to in this letter was printed, and on the said 24th day of December, 1903, before publication of the said dramatic composition in this or any foreign country, was deposited in the mail at New York City, within the United States, addressed to the Librarian of Congress, at Washington, District of Columbia, and was received in due course of post at the office of the Register of Copyrights in the Library of Congress, Washington. The title of the said dramatic composition was in the following words, "Le Dédale, Piece en cinq actes. De Paul Hervieu," and was entered by the Register of Copyrights in Class D, XXC, No. 4,428, the rights in which title the said Hervieu claimed as author and proprietor in conformity with the laws of the United States respecting copyrights.

Two printed copies of the said dramatic composition in the French language, with the same title, were on the said 24th day of December, 1903, and before the publication of the said dramatic composition in this or any foreign country, deposited in the mail at New York City within the United States, addressed to the Librarian of Congress, Washington, District of Columbia, and were received in due course of post at the copyright office in .the Library of Congress, Washington, and were credited on entry XXC, No. 4428 of Class· D 1903, to complete copyright. The copies of "Le Dédale," so deposited, contain 74 numbered pages measuring about 4½ by 7¾ .inches. The title pages in full read as follows: "Paul Hervieu Le Dédale Piece en cinq actes. The play Le Dedale is entered according to act of Congress, in the year 1903, by M. Paul Hervieu, in the office of the Librarian of Congress. All rights reserved." The copies were paper covered ; the covers being yellow or tan in color and containing the same words as the title page. These copies were set up in type in the printing house of L'Illustration, a weekly publication, 13 Rue Saint Georges, Paris, France. L'Illustration appears on Saturday of each week. On Saturday, December 26, 1903, or two days after the title and two printed copies were deposited in the mail within the United States, properly addressed, as hereinbefore set forth, Le Dédale appeared in L'Illustration. This was the first publication of the play in this or any foreign country, and said L'Illustration containing said play Le Dédale was sold to the public in France and the United States.

The copies deposited in Washington were from the identical type used in printing the play in L'Illustration ; the typographical arrangement being exactly the same. The pages in the copies deposited in Washington are the columns in L'Illustration. The advance printing in pamphlet form is consistently done by L'Illustration for the purpose of depositing in Washington, for copyright protection in advance, copies of the plays and dramatic compositions which are subsequently to be published in its columns. On the front cover of all copies of the issue of L'Illustration of December 26, 1903, in which the said dramatic composition appeared, and at the bottom of the first page and at the bottom of the back cover page, the following words appeared: "The play Le Dédale is entered according to act of Congress, in the year 1903, by M. Paul Hervieu, in the office of the Librarian of Congress. All rights reserved." On the cover and title page of every copy of the said play Le Dédale ever published there appears the notice of copyright in the United States as prescribed by section 4962 of the Revised Statutes (copyright law) of the United States.

On December 26, 1905, a book entitled "The Labyrinth, or a Case of Divorce, by George Morehead," was entered in the copyright office in the Library of. Congress, Washington, in the name of the J. S. Ogilvie Company, Class A, XXC, 134,271. Two copies of the book were received at the copyright office on November 14, 1905. The book is paper covered and contains 181 numbered pages and 16 numbered chapters. The title page reads as follows: "The Labyrinth ; or, A Case of Divorce. A Dramatic Story Based Upon Paul Her-

vieu's Famous Play of the Same Name. By George Morehead. Author of 'The Sorceress,' 'Francesca da Rimini,' 'Robert Emmet,' etc., etc. Copyright, 1905, By J. S. Ogilvie Publishing Company, New York. J. S. Ogilvie Publishing Company, 57 Rose Street."

The page numbered "5" in the said book, headed "Introductory," contains the following language: "Olga Nethersole, the distinguished English actress, whose impersonations of 'Sappho' and 'Carmen' are famous in the theatrical annals of England and America, has added another character to her series of stage portraits—that of Marianne in the play called 'The Labyrinth.' The drama is from the pen of Paul Hervieu, who stands at the side of Victorien Sardou as one of the greatest of French playwrights. 'The Labyrinth' is a powerful story of love, passion and revenge, woven with keen dramatic skill and artistic finish into a play of intense interest, which becomes almost tragic in its surging struggle of human passions. It illustrates the fact that divorce is only a human institution, and that while it may dissolve the contract of marriage, it cannot sever the intangible bond that unites two loving hearts. True love cannot be divorced. This story follows faithfully the action and language of the play, and forms an excellent example of the dramatic strength of one of the most powerful of modern dramatists." The story of the book, its characters, scenes, incidents, situations, etc., are based directly upon M. Hervieu's play as printed in book form as hereinafter stated. The defendant's book was published and sold generally to the public by the defendant from the date of the said publication up to the date of the injunction herein.

On or about the 11th day of February, 1907, this action was brought in equity in this court, by Paul Hervieu, the complainant, against J. S. Ogilvie Publishing Company, a corporation, defendant, by the service of the bill of complaint on the defendant. The bill of complaint, filed in this court, prays: (1) That the defendant be forever enjoined from publishing, selling, vending, or offering for sale, or otherwise dealing with the said book "The Labyrinth, or a Case of Divorce," or any publication, book, dramatization, etc., or any colorable imitation, simulation, etc., of "Le Dédale," and that complainant's damages be established by a jury on a feigned issue; (2) that the defendant be compelled to account for all profits derived from the sale of "The Labyrinth, or a Case of Divorce"; (3) that the defendant be compelled to pay such damages to the complainant; (4) that the defendant be decreed to pay the costs of this suit; (5) that the defendant, pursuant to section 4965 of the copyright laws of the United States, be directed to turn over to complainant, all plates and all printed sheets of the said book in defendant's possession and forfeit $1 for every sheet found in his possession, etc.

Motion papers for a temporary injunction were served on the defendant with the bill of complaint herein. The said motion for an injunction came on to be heard before Mr. Justice Hough on the 26th day of February, 1907, and at such time the defendant consented to the entry of an order that, until the entry of the final decree in the said suit, the defendant, its agents, etc., be restrained from publishing, selling, etc., "The Labyrinth, or A Case of Divorce," or any publication, dramatization, translation, etc., or any colorable imitation or simulation of "Le Dédale."

It is further agreed: (1) That the dramatic composition "Le Dédale" was printed in book form in the French language and offered for sale and sold to the public as a book both in France and the United States of America prior to the publication of defendant's book, which is the subject of this action. (2) That the said book was so printed and sold in both France and America by the authority and consent of the complainant, Hervieu. (3) That the said book was printed from plates made in France or from type set up in France, and not printed from plates made in the United States or from type set up in the United States. (4) Defendant's book, the subject of this action, was taken from said book made in France.

The above statement of facts is stipulated and agreed to by the attorneys for the respective parties.

Ernst, Lowenstein & Cane, for complainant.
Andrew W. Gleason, for defendant.

MARTIN, District Judge (after stating the facts as above). It is claimed by the defendant that the complainant's copyright is invalid in that the copies of his dramatic composition as delivered at the office of the Librarian of Congress, and, as brought before the public, were in book form, and therefore come within the proviso of section 3 of Act March 3, 1891, c. 565, 26 Stat. 1106 (U. S. Comp. St. 1901, p. 3406), which is to the effect that copies of books, photographs, chromos, and lithographs filed with the Librarian of Congress shall be printed from type set within the United States, or from plates made therefrom, or from negatives or drawings on stone made within the United States, and that the complainant, in procuring his copyright, filed copies of his dramatic composition in books that were printed from type set without the limits of the United States.

The act of March 3, 1891, is an amendment to the then existing copyright law. It extended the privilege of copyright to foreigners under treaties of reciprocity. The complainant is a citizen of France, and, under the treaties with France, her citizens are entitled to the benefit of this statute. Section 1 of said act, so far as it relates to this question, reads thus:

"The author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut print or photograph or negative thereof, or of a painting, drawing, chromo, statue, statuary—shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing," etc.

Section 3 recites the conditions which must be complied with, and says:

"No person shall be entitled to a copyright unless he shall, on or before the day of publication in this or any foreign country, deliver at the office of the Librarian of Congress, or deposit in the mail within the United States, addressed to the Librarian—a printed copy of the title of the book, map, chart, dramatic or musical composition, engraving, cut, print, photograph or chromo, or a description of the painting, drawing, statue, statuary—for which he desires a copyright, nor unless he shall also, not later than the day of the publication thereof in this or any foreign country, deliver at the office of the Librarian—two copies of such copyright book, map, chart, dramatic or musical composition, engraving, chromo, cut, print or photograph, or in case of a painting, drawing, statue, statuary, model or design for a work of fine arts, a photograph of the same; provided that in the case of a book, photograph, chromo or lithograph, the two copies of the same required to be delivered or deposited as above shall be printed from type set within the limits of the United States, or from plates made therefrom, or from negatives, or drawings on stone made within the limits of the United States, or made from transfers therefrom."

From the foregoing language, it is apparent to me that Congress did not intend to include "dramatic or musical compositions" as a "book." The proviso leaves out map, chart, dramatic, or musical compositions, engraving, cut, print, or photograph, painting, drawing, statue, statuary, or model design for a work of fine arts. All these seem to have been purposely omitted from the list of those articles for which the type must be set, or plates and drawings made, in the United States. The act provides for the printing of the whole list. It was self-evident to Congress, as it is to everybody, that dramatic compositions, if printed, must be upon sheets of paper known

by bookmakers as signatures, and these signatures must be folded, thus making what may be called a "book"; but Congress especially eliminated both musical and dramatic compositions from being classified as a book. Congress twice designated, in the same section, map, chart, dramatic or musical composition, engraving, cut, and print as independent of the word "book," as therein used. It has often been held that a specific designation of any article in the legislative enactment excludes it from general terms contained in the same act. Potter's Dwarris on Statutes, 198; Arthur v. Lahey, 96 U. S. 112, 24 L. Ed. 766; Arthur v. Stephani, 96 U. S. 125, 24 L. Ed. 771; Arthur v. Rheims, 96 U. S. 143, 24 L. Ed. 813; Reiche v. Smythe, 13 Wall. 162, 20 L. Ed. 566; Ferry v. Livingstone, 115 U. S. 549, 6 Sup. Ct. 175, 29 L. Ed. 489.

The question here presented is not whether a dramatic composition can ever be regarded as a book, but whether Congress intended, by the act above quoted, to include dramatic compositions within the terms of the proviso. Dictionary definitions of the word "book" are of no aid in settling this question. It stands squarely upon the meaning of the act.

It was said by Justice Swayne in Smythe v. Fiske, 23 Wall. 374, 380, 23 L. Ed. 47:

"A thing may be within the letter of a statute and not within its meaning, and within its meaning though not within its letter. The intention of the lawmaker is the law."

In Clayton v. Stone, 2 Paine, 382, Fed. Cas. No. 2,872, the court said:

"The literary property intended to be protected by the act is not to be determined by the size, form, or shape in which it makes its appearance, but by the subject-matter of the work."

There is another important thing to consider in construing this statute. The penalty for infringing a copyright of a musical or dramatic composition differs from that of infringing the copyright of books. Section 4964, Rev. St. (U. S. Comp. St. 1901, p. 3413), provides that any person who, without the consent of the proprietor, shall sell or expose for sale any book that is protected by copyright, shall forfeit every copy thereof to the proprietor and pay such damages as may be recovered in a civil action in a court of competent jurisdiction. Section 4966, Rev. St. (U. S. Comp. St. 1901, p. 3415), provides that any person who shall publicly perform or represent any dramatic composition for which a copyright has been obtained, without the consent of the proprietor thereof, shall be liable in damages therefor to be assessed, not less than $100 for the first, and $50 for every subsequent performance.

It will be observed, by analyzing these two sections of the statute, that Congress has intended all through its copyright enactments to distinguish between books and dramatic composition. How the damages are to be measured in the case at bar, it is unnecessary now to discuss.

The history of the bill which resulted in this copyright statute of March 3, 1891, and the contemporaneous construction given it by the

departments and the officers of the government, conform to the views above expressed; but, to my mind, the language of the statute is so clear that it is unnecessary to enter into a discussion of the history of this legislation or the construction given it by the Treasury Department.

The case of Littleton v. Oliver Ditson Co. (decided by Judge Colt of the First Circuit) 62 Fed. 597, and his decision affirmed by the Court of Appeals (67 Fed. 905, 15 C. C. A. 61), involves the very question presented here, except in that case it was a musical composition, while in this it is dramatic; but by the language of the statute dramatic and musical compositions are coupled together. Hence the holding of that court that a musical composition is not included in the proviso as a book applies with equal force to the question presented in the case at bar.

I hold that the complainant's copyright is valid, and that he is entitled to full copyright protection. The agreed statement of facts shows conclusively that the defendant has infringed the complainant's copyright.

Wherefore the complainant may have decree for the relief prayed for in his bill of complaint.