## M. WITMARK & SONS v. STANDARD MUSIC ROLL CO.

(Circuit Court of Appeals, Third Circuit. March 20, 1915.)

### No. 1864.

1. COPYRIGHTS ⬤=66—INFRINGEMENT—LAW GOVERNING.

Under Copyright Act March 4, 1909, c. 320, § 1, 35 Stat. 1075 (Comp. St. 1913, § 9517), providing that any person complying with the provisions of that act shall, in the case of a musical composition, have the exclusive right to perform the copyrighted work publicly for profit, and for the purpose of public performance to make any arrangement or setting of it, or of the melody of it, in any system of notation or form of record, but

that the provisions of that act, so far as they secure a copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after that act becomes effective, section 3 (Comp. St. 1913, § 9519), providing that the copyright provided by that act shall protect all the copyrightable component parts of the work copyrighted and shall give all the rights which the proprietor would have if each part were individually copyrighted, and section 63 (Comp. St. 1913, § 9584), providing that nothing therein shall affect causes of action for infringement theretofore committed, then pending or thereafter instituted, whether the distribution of the words of a song by a manufacturer of perforated music rolls infringed a copyright obtained in 1908 on the musical composition, consisting of the words and staff notation, was governed by the prior law, and not by the act of 1909.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 63; Dec. Dig. ⊜➡66.]

2. COPYRIGHTS ⊜➡66—INFRINGEMENT—"MUSICAL COMPOSITION"—"BOOK."

Under Rev. St. § 4952, as amended by Act March 3, 1905, c. 1432, 33 Stat. 1000, providing that the author of any book, musical composition, etc., by complying with the provisions of that chapter, should have the sole liberty of printing, publishing, finishing, and vending it, under which the Copyright Office ruled that a "musical composition" covered words and music, and that the words of a song alone could be copyrighted only as a "book," a copyright covering a musical composition, consisting of the words of a song and the staff notation, was not infringed by the publication and distribution of the words alone.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 63; Dec. Dig. ⊜➡66.

For other definitions, see Words and Phrases, Second Series, Musical Composition, also, First and Second Series, Book.]

3. COSTS ⊜➡61—DIVISION—PARTIAL RECOVERY—SUITS FOR INFRINGEMENT.

Where a suit for the infringement of copyrights involved two distinct musical compositions, and complainant prevailed only as to one of such compositions, the trial court did not abuse its discretion in making a division of the costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 272; Dec. Dig. ⊜➡61.]

Appeal from the District Court of the United States for the District of New Jersey; Edward G. Bradford, Judge.

Suit by M. Witmark & Sons, a corporation, against the Standard Music Roll Company. From a decree (213 Fed. 532) in favor of defendant, plaintiff appeals. Affirmed.

Nathan Burkan, of New York City, for appellant.

Louis M. Sanders, of Orange, N. J., for appellee.

Before HUNT, McPHERSON, and WOOLLEY, Circuit Judges.

HUNT, Circuit Judge. Witmark & Sons, plaintiff corporation, has appealed from an interlocutory decree of the District Court in and for the District of New Jersey adjudging that the Standard Music Roll Company, defendant, has not infringed the plaintiff's copyright in the musical composition, "In the Garden of My Heart," and dismissing the complaint, and refusing an injunction with respect to the composition, and decreeing that the costs of the District Court be divided between the parties.

Witmark & Sons, appellant, is engaged in the publication of musical compositions. In the course of its business it published and sold complainant's song, copyrighted in August, 1908, entitled "In the Garden of My Heart." The appellee is a corporation engaged in the manufacture of perforated music rolls. In 1912 it adopted a plan of printing the words or lyrics of certain popular songs and inclosing such printed words with the rolls of perforated music, making no extra charge for the printed words sent to the purchaser. It inclosed the printed words of the song, "In the Garden of My Heart." Plaintiff objected, and thus arises the present controversy.

[1] The learned judge of the District Court held that the musical composition, "In the Garden of My Heart," having been copyrighted prior to the Copyright Act of March 4, 1909, was protected only for the musical composition, consisting of music and words, and that, while the copyright of a composition of words or of musical notation extends to all parts of the musical notation or of the words, yet, the copyright having been for the music in conjunction with the words—that is, for a "musical composition"—the inclosing of the words of the musical composition with the perforated rolls did not infringe the copyrighted musical composition.

The appellant contends that this was error because: (1) In all matters concerning the extent of the rights protected by copyright and concerning infringements of such rights, the Copyright Law of March 4, 1909, controls; and (2) because a copyright acquired under the laws which obtained prior to the act of 1909 protected a musical composition consisting of words and music by securing the exclusive right to copy, publish, and print the work.

As the law stood in 1908, the defendant appellee had the right to use the song, "In the Garden of My Heart," on its perforated rolls. This general right was not inhibited by any act of Congress prior to the act of March 4, 1909. In that act, so far as pertinent to this matter it was provided (section 1), that any person entitled thereto, upon complying with the provisions of the act, should have the exclusive right to perform the copyrighted work publicly for profit, if it be a musical composition, and for the purpose of public performance to make any arrangement or setting of it, or of the melody of it, in any system of notation or any form of record in which the thought of an author may be recorded, and from which it may be read or reproduced; but it was expressly provided that the provisions of the act, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, should include only compositions published and copyrighted *after* the act became effective.

In White-Smith Music Publishing Company v. Apollo Company, 209 U. S. 1, 28 Sup. Ct. 319, 52 L. Ed. 655, 14 Ann. Cas. 628, decided before the act of March 4, 1909, was passed, the Supreme Court, after a review of the history of the copyright statutes of the United States since 1831, refers to American and English judicial construction of copyright statutes in determining whether or not perforated sheets of paper are copies of sheet music within the meaning of the Copyright Law. The court said:

"It may be true that in a broad sense a mechanical instrument, which reproduces a tune, copies it; but this is a strained and artificial meaning. When the combination of musical sounds is reproduced to the ear, it is the original tune as conceived by the author which is heard. These musical tones are not a copy which appeals to the eye. In no sense can musical sounds, which reach us through the sense of hearing, be said to be copies, as that term is generally understood, and as we believe it was intended to be understood, in the statutes under consideration. A musical composition is an intellectual creation, which first exists in the mind of the composer; he may play it for the first time upon an instrument. It is not susceptible of being copied until it has been put in a form which others can see and read. The statute has not provided for the protection of the intellectual conception apart from the thing produced, however meritorious such conception may be, but has provided for the making and filing of a tangible thing, against the publication and duplication of which it is the purpose of the statute to protect the composer."

Again, the court inquires, What is the perforated roll used in playing upon a piano to which is attached a mechanical device, where musical rolls consisting of perforated sheets are passed over ducts connected with the operating parts of the mechanism in such a way that by means of perforations in the rolls air pressure is admitted to the ducts which operate the devices to sound the notes? and reasons that even those skilled in making the rolls cannot read them as musical compositions as those in a staff notation are read by the performer, holding that it is not intended that these perforated rolls can be read as an ordinary piece of sheet music, which to those skilled in the art conveys by reading, in playing or singing, definite impressions of the melody. The conclusion reached is that the perforated rolls are parts of a machine to be operated in connection with the mechanism to produce musical tones in harmonious combination, but that they are not copies within the meaning of the Copyright Act.

The argument of the appellant, that because the words of the song were distributed with the perforated rolls since the act of March 4, 1909, went into effect there has been an infringement of copyright, is not persuasive. It is true, as contended, that under the new law one who can avail himself of copyright may charge infringement against one who violates any of the exclusive rights included in the copyright as therein defined. But the intention of Congress is found in the general language that "any person entitled thereto, upon complying with the provisions of this act, shall have the exclusive right," etc.—which refers to the act of 1909. Again, in section 63 of the act of 1909 we find this express provision:

"That all laws or parts of laws in conflict with the provisions of this act are hereby repealed, but nothing in this act shall affect causes of action for infringement of copyright heretofore committed now pending in the courts of the United States, or which may hereafter be instituted; but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

We may concede that the great purpose in the enactment of the Copyright Law of 1909 was to bring together all the statutes applicable to the subject of copyright, and in many instances to enlarge the protection secured by copyright, particularly by protecting the works of authors and composers which had theretofore been regarded as insufficiently protected; yet, notwithstanding this purpose, we must con-

strue section 63 as limiting the remedy in instances where the cause of action for infringement arose prior to July 1, 1909, or where causes were then pending, or to instances where there has been a violation of the statutes which existed prior to July 1, 1909, but which might not be prosecuted until after that date.

[2] We therefore cannot uphold the argument that the appellant now has a cause of action herein which has been given by virtue of the act of 1909; hence are confined to ascertaining whether, under the law as it stood prior to July 1, 1909, the appellants can claim that defendant infringed upon its copyright for a musical composition. The statute under which the song, "In the Garden of My Heart," was copyrighted in August, 1908, is section 4952 of the Revised Statutes, as amended by Act March 3, 1905, c. 1432, 33 Stat. 1000, which reads:

"The author * * * of any book, map, chart, dramatic or musical composition, * * * shall * * * have the sole liberty of printing, * * * publishing, * * * finishing, and vending the same. * * *"

The practical interpretation which for a long time had been given to this statute by the Copyright Office for the registration of copyrights required the applicant to state whether the article for which he desired copyright is a book, musical composition, engraving, or other thing as defined. Articles named in the copyright statutes as subject to copyright were classified on the application blanks, and the rule has provided that, if only the words of a song were desired to be protected, the application should be made out for a "book"; whereas, if protection was desired for both words and music, the application had to be made for a "musical composition." The Copyright Office in 1905, in further interpretation of the statute enumerating the classes of articles which became subjects of copyright protection, informed persons generally that, "if the words only of a song are desired to be protected, the designation 'book' should be used." Under these rules a copyrighted "musical composition" covered words and music; while, if the applicant intended to copyright only the words of a song, he must have designated his work under the classification of "book," which has been construed to be a literary composition. Littleton et al. v. Oliver Ditson Company (C. C.) 62 Fed. 597; Hervieu v. J. S. Ogilvie Pub. Co. (C. C.) 169 Fed. 978.

Appellant urges, however, that section 3 of the Copyright Law of 1909 will give it protection. That section reads:

"That the copyright provided by this act shall protect all the copyrightable component parts of the work copyrighted. * *. * The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this act."

The difficulty with this contention is that the statute reaches only copyright provided by the act of 1909; whereas, in the present instance, the musical composition was copyrighted under an earlier act, which gave a cause of action, the remedy for which was preserved, as already said, by the provisions of section 63 of the act of 1909. From these views, it follows that what might have been copyrighted as a literary production under the classification of a book cannot be said to be a

reproduction of a musical composition when distributed without staff notation.

[3] The decree of the District Court with relation to costs was not unjust. The suit as brought and tried in the lower court involved two distinct musical compositions. Inasmuch as the complainant prevailed in part and failed in part, the court did not abuse its discretion in making a division of costs.

Affirmed.