## F. A. MILLS, Inc., v. STANDARD MUSIC ROLL CO.

### (District Court, D. New Jersey. July 1, 1915.)

1. COPYRIGHTS ⬡48—LICENSE AGREEMENT FOR USE OF COPYRIGHTED WORKS—CONSTRUCTION—"MUSICAL COMPOSITION."

A license agreement, which recites that plaintiff is the owner of a copyrighted musical composition, that defendant desires to secure the privilege of using it in the manufacture of its music rolls, and which declares that plaintiff gives to defendant the privilege to use the copyrighted musical composition in the manufacture of its sound records in any form, and consents to extending the original copyright to the instruments serving to reproduce mechanically the musical work, does not permit defendant to print, and distribute without additional charge, on separate sheets of paper, the words of the composition in the boxes containing the rolls, though the words and music were not copyrighted separately; the words "musical composition" having a more limited meaning in the license agreement than in the copyright statute, where the expression means both words and music.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 46; Dec. Dig. ⬡18.

For other definitions, see Words and Phrases, Second Series, Musical Composition.]

2. COPYRIGHTS ⬡75—INFRINGEMENT—DEFENSES.

Copyright Act March 4, 1909, c. 320, § 1, 35 Stat. 1076 (Comp. St. 1913, § 9519), giving any person entitled thereto, on complying with the act, the exclusive right to print, reprint, publish, copy, and vend a copyrighted work, to perform the copyrighted work publicly for profit, and requiring a copyright owner using the musical composition himself for the maintenance of parts of instruments serving to reproduce mechanically the musical work, or licensing others to do so, to file notice thereof, and providing that any failure to file notice shall be a defense to any suit for any infringement of such copyright, does not prevent an owner of a copyrighted musical composition to maintain an action for protection of his exclusive right to print, reprint, publish, copy, and vend the copyrighted work, merely because he has licensed others to use the copyrighted work on parts of instruments serving to reproduce mechanically the musical work and has failed to file a notice thereof.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 65; Dec. Dig. ⬡75.]

3. COPYRIGHTS ⬡87—INFRINGEMENT—DAMAGES.

Where a licensee of the right to use a copyrighted musical composition in the manufacture of sound records infringed the copyright by distributing free with the perforated rolls copies of the words of the composition, but discontinued the practice almost immediately after it was begun, and he realized no profits from the practice, nor damaged the licensor, the court, in a suit for infringement, would only allow nominal damages, under Copyright Act 1909, § 25.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. ⬡87.]

4. COPYRIGHTS ⬡90—INFRINGEMENT—COSTS.

A defendant, unsuccessful in a suit against him for infringement of a copyright, is liable to reasonable counsel fees, awarded to plaintiff as provided by Copyright Act 1909, § 40.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 85; Dec. Dig. ⬡90.]

In Equity. Two suits, tried together, by F. A. Mills, Incorporated, against the Standard Music Roll Company, for alleged infringements of copyrights. On final hearing. Decree for complainant.

Nathan Burkan, of New York City, for plaintiff.
Louis M. Sanders, of Orange, N. J., for defendant.

HAIGHT, District Judge. F. A. Mills, Incorporated, the plaintiff, has instituted two suits against the Standard Music Roll Company, a corporation, the defendant, for alleged infringements of the plain-tiff's copyrights in two musical compositions, entitled respectively, "Waiting for the Robert E. Lee" and "Take Me to That Swanee Shore." They were copyrighted on May 3, 1912, and August 30, 1912, respectively. The suits were tried together, as the facts and questions presented in each are the same.

The plaintiff is engaged in the publication of musical compositions, and the defendant in the manufacture of perforated music rolls serving to reproduce mechanically the musical features of such compositions. Prior to the committing of the alleged infringing acts, the plaintiff had licensed the defendant to use the copyrighted musical compositions in the manufacture of its perforated rolls. The defendant inclosed and distributed in the boxes containing the rolls separate sheets or slips of paper, on which it had caused to be printed the words or lyrics of the compositions. This, it is claimed, infringed the plaintiff's copyrights.

[1] It is contended primarily on behalf of the defendant that the license agreement permitted the defendant to do this, and consequently that there was no infringement. The license agreement in each case is in writing, and both are in identically the same form. After reciting that the plaintiff is the owner of the copyright, and that the defendant desires to secure the privilege to use "the said copyrighted musical composition, in the manufacture of its music rolls," they each grant the privilege in the following language:

"The publisher [the plaintiff] hereby gives to the company [the defendant] the right, privilege, and authority to use the said copyrighted musical composition, ———, in the manufacture of its sound records in any form whatsoever, and hereby consents to extending the original copyright of said musical composition to the instruments serving to reproduce mechanically the said musical work."

While it seems that the words "musical composition," as used in the copyright statute, mean both words and music (M. Witmark & Sons v. Standard Music Roll Co., 221 Fed. 376 (——. C. C. A. —— [C. C. A. 3d Cir.]), still I think that they must be given a more limited meaning in the license agreements in question. The privilege granted was to use the musical composition "in the manufacture of its · [defendant's] sound · records." The printing of the words on a separate sheet of paper and the distribution of the latter had nothing whatsoever to do with the manufacture of the perforated rolls. They were quite distinct acts. Also by the terms of the license agreements the original copyright is extended "to the *instruments* serving to reproduce mechanically the said musical work." Neither the rolls nor

the instruments in which they were to be used reproduced the words of the compositions, nor were they capable of doing so.

I can readily perceive that, if the defendant were manufacturing discs or records for use in phonographs or similar instruments, which produce both the words and the music, the license agreements would permit the use of both the words and the music, because both would then enter into the manufacture of the records. Admittedly, it was not until some months after the license agreements were executed that the scheme of inclosing the printed words in the same packages with the perforated rolls was conceived by the defendant. It could not, therefore, have been contemplated by the parties, at the time the agreements were executed, that the privilege was to extend to the use of the words in the way in which the defendant has used them. If the defendant has the right to print and distribute the words alone in the way complained of, it would have the same right to print the words and music together on a separate sheet, and distribute it with the perforated rolls. It could thus defeat the plaintiff's exclusive right to publish and sell the musical composition. Manifestly the plaintiff did not, by the license agreements, divest itself of that right. I therefore am constrained to find that the license agreements did not permit the defendant to print and distribute the words of the musical composition in the way in which it did.

It is not questioned by the defendant that, under section 3 of the Copyright Act of 1909 (35 Stat. 1075), the unauthorized use of either the words or music separately would constitute an infringement of the copyrighted "musical composition," although the words and music were not copyrighted separately. It has been so held in this district in M. Witmark & Sons v. Standard Music Roll Co. (D. C.) 213 Fed. 532, although this apparently was not the rule in this circuit prior to the act of 1909. M. Witmark & Sons Co. v. Standard Music Roll Co., 221 Fed. 376, —— C. C. A. —— (C. C. A. 3d Cir.). It therefore follows that the defendant has infringed the plaintiff's copyrights by the unauthorized printing and distribution of the words of the copy-. righted musical compositions.

[2] But it is further urged on behalf of the defendant that because the plaintiff has licensed others to use the copyrighted works upon parts of instruments serving to reproduce mechanically the musical works, and has failed to file a notice thereof in the Copyright Office, as provided by subsection "e" of section 1 of the act of 1909, it is, by virtue of that section, barred from any recovery for an infringement of its copyrights. It is true that this section makes it the duty of the owner of the copyright, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file a notice thereof in the Copyright Office, and provides that "any failure to file such notice shall be a complete defense to any suit, action or proceeding for any infringement of *such* copyright." It is the defendant's contention that this provision bars recovery for any infringement of the copyright; while the plaintiff contends that it only precludes it from instituting a suit for infringement against one using

the copyrighted work, or a part thereof, in the manufacture of parts of instruments serving to reproduce mechanically the musical work.

I think that the latter construction is the proper one. The question is novel, not having been passed upon by any court, so far as I have been able to ascertain. The statute secures to the persons entitled thereto several exclusive rights, which are mentioned separately in distinct subsections. The plaintiff was entitled to the exclusive right (1) to print, reprint, publish, copy, and vend the copyrighted work (subsection "a"); (2) to perform the copyrighted work publicly for profit, etc.; and (3) for the purposes set forth in subsection "a," to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author could be recorded and from which it might be read or reproduced (subsection "e"). The two first mentioned rights existed prior to the act of 1909 (Rev. Stat. §§ 4952 and 4966), but the third one did not. White-Smith Music Publishing Company v. Apollo Company, 209 U. S. 1, 28 Sup. Ct. 319, 52 L. Ed. 655, 14 Ann. Cas. 628. In subsection "e" it is provided, "as a condition of extending the copyright control to such mechanical reproductions," that if the owner of the copyright use or permit others to use the copyrighted work upon parts of instruments serving to reproduce mechanically a musical work, any other person may make similar use of it upon payment of a royalty therein provided for; and in a separate and further proviso of the same subsection appears the clause which the defendant now invokes. Subsection "e" confers and deals with certain phases of a new copyright. The failure to file the notice of user is, by the act, a defense to an infringement of *"such"* copyright. The use of the word "such," therefore, I think, refers only to the copyright conferred by subsection "e."

Also the location of the proviso in the section and the context, I think, lends strength to this view. The proviso is found in and it is part of a distinct subsection, and is not applicable at all to some of the other matters dealt with in the other subsections. It therefore follows that, as these suits are not for infringement of the plaintiff's exclusive right secured under subsection "e," but for the right secured under subsection "a," the plaintiff's failure to have filed a notice of user is not a defense to this suit.

[3] The plaintiff prays in its bills for profits and damages, but at the final hearing consented that, in lieu of actual damages and profits, if any there were, the court should allow such damages as should appear to be just, pursuant to the provisions of section 25. Under the circumstances of this case, and as stated to counsel at the time the consent was given, I cannot conceive that the plaintiff has suffered any actual damages by reason of the infringing acts, and I will therefore allow nominal damages of 6 cents. The use of the printed words with the perforated rolls, as far as these two works were concerned, was discontinued by the defendant at or shortly before the suit was instituted and almost immediately after the practice was begun. The defendant made no extra charge for the printed slips, and, so far as appears, realized no profits therefrom.

[4] The defendant did, however, contest the right of the plaintiff to a preliminary injunction and to recover on final hearing. A motion to dismiss the bills was also made on its behalf. Under these circumstances, I think that the plaintiff's counsel is entitled to a reasonable counsel fee, as provided in section 40 of the act of 1909. This I fix at the sum of $150, to be taxed as part of the costs, to which latter the plaintiff is also entitled, as it is to the injunction prayed for.