## UNITED STATES v. M. GRUMBACHER (No. 4256)[1]

United States Court of Customs and Patent Appeals, October 30, 1939

*Webster J. Oliver*, Assistant Attorney General (*Ralph Folks* and *Marcus Higginbotham, Jr.*, special attorneys, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument October 3, 1939, by Mr. Oliver and Mr. Bevans]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

In 1935 and 1936 appellee imported at the port of New York certain merchandise which was classified by the collector under the provisions of paragraph 1506 of the Tariff Act of 1930 as toilet brushes, and the same was assessed with duty at 1 cent each and 50 per centum ad valorem.

Two importations were involved and protests were filed with respect to both importations. The protests claimed that the merchandise consisted of "hair pencils" and that it is dutiable under said paragraph 1506 at the rate of 40 per centum ad valorem. An alternative claim was made which it is not necessary to discuss.

Said paragraph 1506 reads as follows:

PAR. 1506. Brooms, made of broom corn, straw, wooden fiber, or twigs, 25 per centum ad valorem; tooth brushes and other toilet brushes, the handles or backs of which are composed wholly or in chief value of any product provided for in paragraph 31, 2 cents each and 50 per centum ad valorem; handles and backs for tooth brushes and other toilet brushes, composed wholly or in chief value of any product provided for in paragraph 31, 1 cent each and 50 per centum ad valorem;

---

[1] C. A. D. 80.

toilet brushes, ornamented, mounted, or fitted with gold, silver, or platinum, or wholly or partly plated with gold, silver, or platinum, whether or not enameled, 60 per centum ad valorem; other tooth brushes and other toilet brushes, 1 cent each and 50 per centum ad valorem; all other brushes, not specially provided for, 50 per centum ad valorem; hair pencils in quills or otherwise, 40 per centum ad valorem.

Before the Customs Court the protests were consolidated for the purpose of trial.

The appraiser's answer to one of the protests reads in part as follows:

The merchandise in question consists of aluminum stemmed brushes used for applying nail polish and color to the finger nails. It was returned for duty as toilet brushes at 1¢ each and 50% ad valorem under Par. 1506, Act of 1930.

Two witnesses testified in behalf of appellee and nine witnesses testified in behalf of appellant.

Samples of the involved merchandise were received in evidence.

The trial court held that the merchandise was dutiable as hair pencils at 40 per centum ad valorem under said paragraph 1506, and entered judgment accordingly sustaining the protests. From such judgment this appeal was taken.

It is established that the articles consist of small brushes of soft hair set in metal ferrules; the brushes have a square or flat end and are used in applying liquid polish to the fingernails, for water color painting, for applying lacquer, for applying correction fluid in mimeographic work, and for other purposes.

It is our opinion that, under the common meaning of the term "hair pencils" as defined by lexicographers, the involved articles are such. Among such definitions we quote the following:

Funk & Wagnalls New Standard Dictionary:

* * * hair pencil, n.: a small brush used especially by carriage-painters, for drawing fine lines.

pencil, n.: * * * 2. A small finely pointed paint-brush usually made of hairs inserted in a quill. * * *

Webster's New International Dictionary:

hair pencil: A brush or pencil made of fine hair, for painting;—generally called by the name of the hair used, as camel's-hair pencil, sable's-hair pencil, etc.

Encyclopedia Britannica:

Pencil, a name originally applied to a small, fine pointed brush used in painting, and still employed to denote the finer camel's hair and sable brushes used by artists. * * *

Century Dictionary and Cyclopedia, edition of 1913:

Pencil, n., A small fine brush, such as may be used by a painter in laying on paints, technically, a special type of pointed brush the hairs of which are held by a quill ferrule with a wooden handle which is often detachable. The hair may be sable, fitch, camel's hair, or ox-hair, and may be brought to a point or

be square on the ends. Such brushes are used in water-color and miniature painting, lettering, striping, and ornamenting. * * *

Hair pencil, A fine brush or pencil made of hair, used in painting, etc. Hair pencils are made of very fine hair, as of the camel, squirrel, marten, badger, polecat, etc., mounted in a quill when of small size. * * *

Adeline's Art Dictionary, 1891:

Pencil: The term "pencil" is sometimes applied to small hair brushes, set in metal ferrules, which are used by water colorists.

Brush: Painting brushes are made of hair or bristles of animals, securely fastened in a quill or ferrule of tin and fastened to a stick. They are either flat or conical shape and are used to lay on and spread the colors.

Except for the fact that the articles in question have a square or flat end, they correspond in structure with all of the definitions above quoted, and it may be observed that the Century definition of the word "pencil" includes square ends. With respect to the square or flat end, the witnesses in behalf of appellee testified that, by moistening the end of the pencil, a narrow edge could be formed.

For the reasons hereinafter stated we do not find it necessary to determine the chief use of such articles as are here involved; but, assuming without deciding that they are chiefly used for applying liquid polish to the fingernails, we think such use is so nearly akin to some of the uses set out in the above quoted definitions that the articles should be held to be hair pencils.

We think the testimony in the case upon the point of whether the involved articles are hair pencils, which is only advisory to the court, supports this conclusion.

However, it is appellant's contention that, even though the imported merchandise consists of hair pencils, such pencils are a species of brush and therefore dutiable as "other toilet brushes" under the doctrine of chief use.

That a hair pencil is a species of brush, as that term is commonly understood, is established by the definitions hereinbefore quoted, and is, as we understand it, conceded by appellee.

However, appellee contends that for more than 75 years Congress has distinguished, for tariff purposes, between hair pencils and brushes, and has never regarded a hair pencil as a species of brush.

If this contention be correct, then it will be unnecessary to consider the chief use of articles such as are here involved, for if Congress did not intend that hair pencils should be considered as a species of brush, there would be no room for the application here of the provision of paragraph 1506 for "other toilet brushes."

Appellee's brief correctly sets forth the history of tariff treatment of brushes and hair pencils as follows:

The Tariff Act of March 2, 1861 assessed an ad valorem duty of 30% on a number of articles which were set forth in alphabetical order. In this alphabetical list of articles made dutiable in that Act, there appeared in the proper order:

"Brooms and brushes of all kinds."

"Hair pencils."

The Tariff Act of July 14, 1862 likewise provided for a number of articles, alphabetically arranged, among which were in proper order, the following:

"Brooms and brushes of all kinds."

"Hair pencils."

The Tariff Act of March 3, 1883, provided separately for "brushes of all kinds" at 30% ad valorem, and for "hair pencils" at the same rate.

The Tariff Act of 1890 provided for:

"Brushes and brooms of all kinds, including feather dusters and hair pencils in quills, 40 per centum ad valorem."

The Tariff Act of 1894 provided likewise for:

"Hair pencils, brushes, and feather dusters, 35 per centum ad valorem."

The Act of 1897 contained the following language:

"Brushes, brooms, and feather dusters of all kinds, and hair pencils in quills or otherwise, 40 per centum ad valorem."

The Tariff Act of 1909 contained identically the same provision and the same rate of duty.

The Tariff Act of 1913 provided for:

"Brushes and feather dusters of all kinds, and hair pencils in quills or otherwise, 35 per centum ad valorem."

The Tariff Act of 1922 provided as follows:

"Tooth brushes and other toilet brushes, 45 per centum ad valorem; all other brushes not specially provided for, including feather dusters, and hair pencils in quills or otherwise, 45 per centum ad valorem."

Paragraph 1506 of the Tariff Act of 1930 has hereinbefore been quoted.

Previous to the tariff act of 1861 hair pencils were not *eo nomine* provided for.

It appears from the foregoing that Congress has not, since 1861, regarded a hair pencil, for tariff purposes, as a species of brush, and therefore could not have intended that, if a hair pencil is used for a toilet purpose, it should be classified under paragraph 1506 as "other toilet brushes."

This conclusion is supported by the relation of the provision for hair pencils in paragraph 1506 to the other provisions relating to brushes. It will be observed that paragraph 1506 first provides for tooth brushes and other toilet brushes, at various rates according to the material of which they are composed; next is a "catch-all" provision for "all other brushes, not specially provided for," followed by the provision for hair pencils. It would seem that, had Congress intended that a hair pencil should be regarded as a species of brush for tariff purposes, provision for it would have preceded the "catch-all" clause instead of following it.

It is elementary that the master rule of construction of tariff statutes is so to interpret them as to carry out the legislative intent. It is clear to us that, although hair pencils are brushes within the common meaning of that term, Congress has never, for tariff purposes, so regarded them. It will be observed from the quotations

from previous tariff acts, above given, that brushes and hair pencils were in a number of tariff acts separately provided for by *eo nomine* designations, both carrying the same rate of duty. Had Congress regarded hair pencils as a species of brush, this would have been wholly unnecessary.

In the case of *Reiche* v. *Smythe*, 13 Wall. 162, it was held that, where an act of 1861 exempted from duty "animals of all kinds; birds, singing and other and land and water fowls," and a later act levied a duty of 20 per centum "on all horses, mules, cattle, sheep, hogs, and other live animals," birds were not included in the term "other live animals." The court in its opinion stated:

The act of 1866 in its terms is comprehensive enough to include birds, and all other living things endowed with sensation and the power of voluntary motion, and if there had not been previous legislation on the subject there might be some justification for the position, that Congress did not intend to narrow the meaning of the language employed. If it be true that it is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject matter to which it relates, there is an equal duty to restrict the meaning of general words, whenever it is found necessary to do so, in order to carry out the legislative intention. And it is fair to presume in case a special meaning were attached to certain words in a prior tariff act, that Congress intended they should have the same signification when used in a subsequent act in relation to the same subject-matter. * * * Both acts are *in pari materiâ*, and it will be presumed that if the same word be used in both, and a special meaning were given it in the first act, that it was intended it should receive the same interpretation in the latter act, in the absence of anything to show a contrary intention.

In the case at bar there is nothing in paragraph 1506 to show an intention on the part of Congress to vary the meaning of the terms "brushes" and "hair pencils" as used in prior tariff acts. On the contrary, the paragraph maintains the previous policy of Congress in distinguishing, for tariff purposes, between "brushes" and "hair pencils."

While we are not in agreement with all of the reasoning in the decision of the trial court, we are in accord with its conclusion, and the judgment appealed from is *affirmed*.