Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 The act of 1866 in its terms is comprehensive enough to include birds, and all other living things endowed with sensation and the power of voluntary motion, and if there' had not been previous legislation on the subject there might be some justification for the position, that Congress did not intend to narrow the meaning of the language employed. If it be true that it is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, there is an equal duty to l’estriet the meaning of general words, whenever it is found necessary to do so, in order to carry out the legislative intention.
 
 ‡
 
 And it is fair to presume in case a special meaning were attached to certain words in a prior tariff act, that Congress intended they should have the same signification when used in a subsequent act in relation to the same subject-matter.
 

 This act of 1861 was in force when the act of 1866—the act in controversy—was passed, and it will be seen that birds and fowls are not embraced in, the term “animals,” and that they are free from duty, not because they belong to the class of “ living animals of all kinds,” but for the
 
 *165
 
 reason that they are especially designated. It is quite manifest that Congress, adopting the popular signification of the word “ animals,” applied it to quadrupeds, and placed birds and fowls in a different classification. Congress having, therefore, defined the word in one act, so as to limit its application, how can it be contended that the definition shall be enlarged in the next act on the same subject, when there is no language used indicating an intention to produce such a result? Both acts are
 
 in pari materid,
 
 and it will be presumed that if the same word be used in both, and a special meaning were given it in the first act, that it was intended it should receive the same interpretation in the latter act, in the absence of anything to show a contrary intention.
 
 *
 

 If it be used in a different sense in the act of 1866, its meaning instead of being extended is narrowed, for all animals not
 
 ejusdem generis
 
 “with horses, mules, cattle, sheep, and hogs,” are excluded from the operation of the revenue laws. By the act of 1861, living animals of all kinds, whether domesticated or not, could be imported without paying a duty. The law of 1866 steps in and imposes a duty on domestic quadrupeds, leaving the act of 1861 applicable to all other quadrupeds, and to birds and fowls.
 

 The case of
 
 Homer
 
 v.
 
 The
 
 Collector,
 
 †
 
 is in principle not unlike this. The object of that suit was to ascertain whether, under the tariff act of 1857, almonds were placed in the category of dried fruits, on which a small duty was imposed. It was contended as the article was popularly classed among the dried fruits of the table, with raisins, dates, &e., and as it was not named specifically in the changes in the act of 1857, that it properly belonged to the schedule providing for dried fruits. But the court held that as a duty had been imposed on almonds,
 
 eó nomine,
 
 in previous tariff' acts, the article was not, for revenue purposes, within the general term of dried fruit, although in popular language and commercial usage such was its signification.
 

 Judgment reversed, and a venire de novo awarded.
 

 ‡
 

 Brewer
 
 v.
 
 Blougher, 14 Peters, 178.
 

 *
 

 Dwarris on Statutes, pp. 701-766.
 

 †
 

 1 Wallace, 486.