586

673 A.2d 709

**Hossein GHAJARI**

v.

**STATE of Maryland.**

**No. 348, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

March 27, 1996.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jerry F. Barnes, State's Attorney for Carroll County, Westminster, on the brief), for appellee.

Submitted before BISHOP, FISCHER, and MURPHY, JJ.

MURPHY, Judge.

Md.Code (1957, 1992 Repl.Vol.), article 27, § 2 provides:

Any person who shall without the color of right forcibly abduct, take or carry away any child under the age of twelve years from the home or usual place of abode of such child, or from the custody and control of the parent ... of such child, or be accessory thereto, or who shall without such color of right and against the consent of the parent ... of such child, persuade and entice from the usual place of abode or house of such child, or from the custody and control of the parent ... of such child, or be accessory thereto, or shall knowingly secrete or harbor such child, or be accessory thereto, with the intent to deprive such parent ... of the custody, care and control of such child, shall be guilty of a felony and upon conviction shall suffer imprisonment in the penitentiary for a term not exceeding twenty years, in the discretion of the court.

Md.Code (1984, 1991 Repl.Vol., 1995 Cum.Supp.), § 9–305 of the Family Law Article (F.L.) [1] provides:

If a child is under the age of 16 years, a relative who knows that another person is the lawful custodian of the child may not: (1) abduct, take or carry away the child from the lawful custodian to a place outside of this State;

(2) having acquired lawful possession of the child, detain the child outside of the State for more than 48 hours after the lawful custodian demands that the child be returned;

---

1. A 1995 amendment substituted "16" for "12" in the introductory language. At all times relevant to this case, the statute proscribed the abduction, etc. of children under the age of 12.

(3) harbor or hide the child outside of this State knowing that possession of the child was obtained by another relative in violation of this section; or

(4) act as an accessory to an act prohibited by this section.

This appeal from the Circuit Court for Carroll County presents us with the question of whether a child's natural but non-custodial parent can be prosecuted under both of these statutes.[2]

## Facts

Hossein Ghajari, appellant, was charged with two counts of child abduction pursuant to Art. 27, § 2, and two counts of child abduction pursuant to F.L. § 9–305. He entered pleas of not guilty and agreed to proceed on the following statement of facts:

On or about March 16, 1990, at 349 Apartment V, Westminster, Carroll County, Maryland, [appellant] without the color of right and against the consent of the parent, lawful custodian and natural mother, Homayoun Tajalibakhash did persuade and entice Simin Ghajari, the daughter, date of birth July 13, 1982, and Siavash Ghajari, the son, date of birth April 23rd, 1984, from the home of Simin and Siavash Ghajari ... and he did transport the children to the State of New York, in the United States, and from there to the country of Iran, and did keep secrete and harbor the children there with the intent to deprive their mother of the custody care and control of the Children, until such time as the children were ... recovered by their mother on June 27th, 1993, in Iran.... [A]ll of this was being done contrary to the mother's custodial right in the children, which prohibited the removal of the children from the State of Maryland in violation of Article 27, Section 2, as well as the

---

2. Appellant actually framed the following questions for our review:
 I. Did the trial court err in imposing a sentence greater than one year?
 II. Did the trial court err in failing to merge the Article 27 § 2 convictions into the Family Law § 9–305 convictions?

Family Law Article he's charged with. [Appellant] also knew the mother was the lawful custodian of the children.

Specifically, [appellant] and Homayoun Tajalibakhash were married. They had two children, a daughter, Simin, born July 13, 1982, and a son, Siavash, ... born April 23, 1984. [Appellant] and Ms. Tajalibakhash separated in 1988. They entered into a Voluntary Separation and Property Agreement that was dated August 31st, 1988, where in [sic] it was agreed that the wife, Homayoun, was to have custody of the two children, and that [appellant] was to have liberal visitation, but he was not to remove the children from the State without prior written consent from the wife. [Appellant]. signed this agreement.

On October 20th of 1988, a Consent Order was signed by this Honorable Court and [appellant] and Homayoun. In this Consent Order, the Court granted temporary care and custody of the children to the mother ... and it further ordered that [appellant] was to have reasonable visitation with the children with the following caveat: That [sic] [appellant] was not to remove the children from the State of Maryland without the prior written consent of the mother.

The parties were divorced, absolutely, on April 20th, 1990, and Homayoun was granted custody, and [appellant] was granted reasonable visitation.

On or about March 16 of 1990, [appellant] picked up his children, Simin, who was seven years old at the time, and Siavash, who was five at the time. He picked them up from their home located at 349 Bishop Street, Carroll County, Maryland. [Appellant] was to have the two children for a weekend visitation and was to return them by 7 a.m. the morning of March 19 of 1990. [Appellant] did not have written or oral permission from the natural mother, Homayoun, to take the children out of the state. Plans to take the children out of the state or country were never discussed with the mother.

On March 19th, 1990, when the children were not returned to their home, Homayoun called their school and found that neither child was in school. The only person

Homayoun knew to contact was a relative of [appellant], who she knew as Ali ... who [appellant] was living with in New York at the time. When she contacted Ali, he provided the following information to her: That [sic] [appellant] borrowed his car to drive to Maryland to see his children. On March 17th, 1990, Ali received a call from [appellant] stating that the car could be picked up at Kennedy Airport; that [appellant] had removed all his personal belongings from the residence in New York, and when the police contacted Ali later on, he told them that he went to Kennedy Airport to get his car, he saw [appellant] and the two children in a Delta Airline terminal but did not know where they were going.

On [sic] 5:30 p.m. on March 19, 1990, Homayoun called [appellant's] mother, who was living in Iran. She had a feeling that that's where he would go. She talked to [appellant]. She could hear the children in the background, but [appellant] would not let her talk to them at that time. [Appellant] had to obtain passports for the children in order to travel to Iran, because Homayoun had the children's passports at the time. At the time, [appellant] was an Iranian citizen and was in this country on a green card. During this phone call, she demanded the return of the children. She also demanded the return of the children when she talked with [appellant] when she [called] the children on a monthly basis. [Appellant] refused and said it was her turn to be miserable.

Homayoun did not see her children again for three years and two months. When she went back to Iran and found her children, she gave them the choice to stay in Iran or go home to the United States. Both children chose to return with their mother to the United States and did so on June 27 of 1993. The children were nine and eleven when they came back to the United States.

During their absence, Homayoun talked to the children once a month. She also talked with [appellant], who would continually try and persuade her to come back to Iran.

The children would testify that they were not aware their father was not to take them out of the state in March of 1990. He told them he was taking them to New York to visit relatives, and when he took them to the airport, he told them that they were going back home.

[Appellant] would be identified by Homayoun and his two children, Simin and Siavash, as the individual who's seated next to his attorney at trial table.... At no time did [appellant] have oral or written permission to take the children out of the state of Maryland.

Appellant was convicted of all four charges and was sentenced to a total of ten years imprisonment. For each conviction under F.L. § 9–305, appellant received a one year sentence. The sentence for abducting Simin was consecutive to the sentence for abducting Siavash, but both sentences were concurrent to two concurrent ten year sentences imposed for the Art. 27, § 2 convictions. All sentences were suspended on condition that appellant complete successfully a five year period of probation.

### Discussion

The non-custodial parent who abducts his or her child from the custodial parent must be prosecuted under F.L. § 9–305 unless, prior to the abduction, there has been a judicial termination of his or her parental rights.[3] We base our conclusion on the language of Art. 27, § 2 as well as the legislative history of F.L. § 9–305.[4]

---

**3.** We are persuaded that a parent whose rights have been judicially terminated can be prosecuted under Art. 27, § 2.

**4.** Our decision is not based on the rule that, when the defendant's conduct is proscribed by both a specific statute and a more comprehensive general statute, the prosecution is obliged to proceed under the specific statute. *Henry v. State*, 273 Md. 131, 133–134 n. 1, 328 A.2d 293 (1974), *Schwartz v. State*, 103 Md.App. 378, 389–390, 653 A.2d 958 (1995). This rule applies only if a person could not violate the specific statute without also violating the general statute. *Maguire v. State*, 192 Md. 615, 623, 65 A.2d 299 (1949). A conviction under Art. 27 § 2 requires proof that the defendant was not acting under "color of right." Because no such proof is required in prosecutions under F.L. § 9–305,

 A parent has a right to the "companionship, care, custody and management of his or her children." *In Re Adoption/Guardianship No. 10941 in the Circuit Court for Montgomery County,* 335 Md. 99, 113, 642 A.2d 201 (1994) (quoting *Lassiter v. Department of Social Services,* 452 U.S. 18, 38, 101 S.Ct. 2153, 2165, 68 L.Ed.2d 640 (1988)). *See also Frye v. Frye,* 305 Md. 542, 558–560, 505 A.2d 826 (1986). Parents have a natural right to the custody of their children, although this right shall not be enforced against the child's best interest. *Ross v. Hoffman,* 280 Md. 172, 176, 372 A.2d 582 (1977). *See* Md.Code Ann. (1984, 1991 Repl.Vol., 1995 Cum.Supp.) Fam.Law § 5–203.

 Art. 27, § 2 applies only to persons who act "without color of right," a term that is not defined in the statute or elsewhere in Maryland law. In construing a statute, the words are given their plain and ordinary meaning. *Williams v. State,* 329 Md. 1, 15, 616 A.2d 1275 (1992). "Color" has been defined as "an appearance, semblance or *simulacrum,* as distinguished from that which is real. A *prima facie* or apparent right. Hence, a deceptive appearance; a plausible, assumed exterior, concealing a lack of reality; a disguise or pretext." *Black's Law Dictionary* 265 (6th ed. 1990). The term "color" appears in Article 36 of the Maryland Declaration of Rights. That Article preserves the equal protection of religious liberty to all except those persons who "under the color of religion" disturb the peace, behave immorally or otherwise injure others.

In federal civil rights litigation, the term "color of state law" has been defined as follows:

> Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.

---

every violation of F.L. § 9–305 does not constitute a violation of Art. 27 § 2.

*United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). That definition is useful to our interpretation of Art. 27, § 2. Appellant misused the right of visitation that he possessed by virtue of a Consent Order. His violation of F.L. § 9–305 was made possible only because he was clothed with the "color of right" to the custody of his children. We cannot affirm his convictions under Art. 27, § 2.

Our holding is supported by the legislative history of F.L. § 9–305.[5] The legislature enacted this provision under the correct impression that Maryland law lacked criminal sanctions against non-custodial parents who snatch their children from the children's custodial parents.[6] The bill file contains a memorandum to Senator Curran, one of the bill's sponsors, noting that "the taking of a child by anyone *other than a parent* would be covered by federal kidnapping statutes." (emphasis in original). The "special instructions" section of the bill's request form states that "Maryland has no criminal penalties for 'child-snatching' by a parent or agent of a parent; [one of the bill's sponsors] wants a bill to provide for child-snatching." A committee note in the bill file reads:

> This bill makes it a crime for a person who is *not* a lawful custodian to abduct a child under 12 for a period in [excess] of 48 hours. present [sic] Art. 27 Sec. 2 (Abduction) does not cover this situation because it only applies to persons "without color of right."

(emphasis in original) (quoting Art. 27, § 2). Appellant's

---

5. We recognize "that not all legislative history has equal value in the court's exercise of assigning probabilities to various statutory readings." Jack Schwartz & Amanda S. Conn, *The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History,* 54 Md.L.Rev. 432, 437 (1995). We have therefore relied on "documents that are most likely to reflect actual legislative purpose." *Id.* at 462.

6. Art. 27, § 2 is derived from the Child Abduction Act of 1876. Its legislative history is not available.

convictions under Art. 27, § 2 must be reversed.[7] His convictions under F.L. § 9–305 are hereby affirmed.

**JUDGMENTS OF CONVICTION FOR VIOLATION OF ARTICLE 27, § 2 REVERSED; ALL OTHER JUDGMENTS AFFIRMED; COSTS TO BE PAID BY CARROLL COUNTY.**

---

7. We recognize that "it is for the legislature to define criminal offenses and their punishments." *Spitzinger v. State,* 340 Md. 114, 119, 665 A.2d 685 (1995). "[T]he legislature may provide for cumulative sentences or multiple punishments for separate crimes." *Id.* We are persuaded, however, that the legislature did not intend to provide for **multiple** punishments of natural parents who violate custody orders.