Dear Emanuel Demedis
On behalf of the Calvert County Board of County Commissioners, you have requested our opinion on whether part of the public roads subtitle under Article 25 of the Annotated Code of Maryland was repealed by the subsequent enactment of certain provisions of Article 66B of the Code, entitled Land Use.
While some provisions of the public roads subtitle appear antiquated, in our view, the public roads subtitle was not repealed by the enactment of the Land Use article. We recommend that the General Assembly evaluate these provisions, as well as other statutory provisions governing county roads, for appropriate modernization.
 I Statutory Background
A. Public Roads Subtitle of Article 25
You question the continuing viability of certain provisions in Annotated Code of Maryland, Article 25, §§ 135 — 155B, relating to the opening, closing, or altering of a road by a county.[1] Many of these provisions are virtually unchanged since their initial *Page 104 
enactment, more than 150 years ago. See Chapter 220, Laws of Maryland 1853.[2]
Article 25, § 135 allows a person to petition county commissioners for the opening, altering, or closing of a road. Before submitting the petition, the person must give notice to the public in accordance with § 136(a). The county commissioners may also initiate this process on their own initiative in the absence of a petition. Article 25, § 136(b).[3] The county commissioners' authority under this provision is "[i]n addition to . . . their present power to open, alter or close public roads." Id.[4]
Regardless of how the process is initiated, opponents of the proposed action may file a "counter petition." Article 25, § 137. The county com missioners are to take into consideration reasons set forth in any counter petition, as well as any other testimony, in reaching a decision as "shall seem right and proper." Article 25, §§ 136(b), 137.
If the county commissioners decide to open a road pursuant to the provisions of the public roads subtitle, they may contract with the *Page 105 
owner of any property through which the road is intended to run for the necessary right-of-w ay. Article 25, § 138. In addition, the county commissioners are to arrange for a surveyor to create a plat of the road that is filed with the clerk of the county circuit court. Id. The property becomes county property "to the same extent as other county roads." Id.
Under the public roads subtitle, the county commissioners have the option of appointing three "examiners", who must be disinterested property owners ("freeholders") in the county, [5] to evaluate the opening, altering, or closing of a road in a particular area. Article 25, § 138. After giving 30 days advance public notice, the examiners are to convene at the proposed site to determine whether "the public convenience requires that the road should be opened, altered, or closed." Article 25, § 141.
The examiners are to report their conclusions to the county commissioners. Article 25, §§ 142, 143. If the examiners support opening or altering a road, they are to locate the road in a manner that, in their judgment, will best promote the public convenience, and cause a plat to be created showing the road's location; a plat also is required to show any old road that is to be altered or closed. Article 25, § 142. The plat and a report, including the reasons for the examiners' opinions, is to be provided to the county commissioners. Id. If they recommend that the road be opened or altered, the examiners are also to evaluate the loss sustained by the owner of the property and include that determination in their report to the county commissioners. Article 25, § 146. In return for these efforts, an examiner is entitled to compensation set by the county commissioners "not exceeding two dollars a day." § 151. Regardless of whether the county commissioners appoint examiners, the final decision of whether to open, alter, or close a road lies with the commissioners. §§ 137, 138, and 150.
Subject to individual county exceptions, the public roads subtitle prohibits the opening of a public road or the altering of a public road in a manner that would cause the road to run through a building, garden, yard, or burial ground, without the owner's written consent. Article 25, § 144. The public roads subtitle also addresses, among other things, minimum widths, the liability of petitioners for *Page 106 
the costs of the road, and allocation of costs related to roads opened under the subtitle. Article 25, §§ 145, 147, 152.
B. Land Use Article (Article 66B)
Article 66B, which authorizes counties to adopt various land use restrictions, was first enacted during the 20th century and thus is of more recent origin than the public roads subtitle of Article 25.[6] It repealed "inconsistent" or "contrary" statutory provisions, although it did not specify the provisions in that category. Article 66B, § 7.05. In suggesting that the enactment of Article 66B repealed the public road subtitle of Article 25, you focus on three aspects of Article 66B: (1) the provisions for comprehensive planning, including a required transportation element; (2) the subdivision process; and (3) the authority of the planning commission to recommend to the county commissioners the reservation of property for future streets and other parts of the transportation element of the comprehensive plan.
1. Planning
Article 66B authorizes counties governed by a board of county commissioners[7] to undertake certain land use and development measures.[8] Article 66B authorizes these counties to create by *Page 107 
ordinance a county planning commission "with the powers and duties set forth in [Article 66B]" and to "enact, adopt, amend, and execute a plan." Article 66B, § 3.01(a). The planning commission develops and approves the plan, but final adoption lies with the county commissioners. Article 66B, § 3.05(a)(1). At least once every six years, the planning commission must review a plan and make certain revisions if necessary. Article 66B, § 3.05(b)(2).
For purposes of this statute, a plan means "the policies, statements, goals, and interrelated plans for private and public land use, transportation, and community facilities documented in texts and maps which constitute the guide for the area's future development." Article 66B, § 1.00(h)(1). The plan is to "[s]erve as a guide to public and private actions and decisions to insure the development of public and private property in appropriate relationships." Article 66B, § 3.05(a)(2)(i). Several "visions" are to be part of a plan, including "[a]dequate . . . infrastructure under the control of the county . . . in areas where growth is to occur." Article 66B, § 1.01(7).
Among other requirements, the plan is to include a transportation plan element which shall "1. [p]ropose the most appropriate and desirable patterns for the general location, character, and extent of the channels, routes, and terminals for transportation facilities, and for the circulation of persons and goods on a schedule that extends as far into the future as is reasonable; 2. [p]rovide for bicycle and pedestrian access and travelways; and 3. [i]nclude an estimate of the probable utilization of any proposed improvement[.]" Article 66B, § 3.05(a)(4)(iii). The transportation element may include "all types of highways and streets" and is to provide for the local jurisdiction's "[t]ransportation needs." Article 66B, § 3.05(a)(5)(i) and (c)(4)(i). *Page 108 
When a plan is in place, a publicly or privately owned street ordinarily may not be authorized or constructed unless the planning commission determines it is consistent with the plan. Article 66B, § 3.08(a). The local legislative body or other body having jurisdiction over the street's financing may override the planning commission's decision by a two-thirds supermajority vote. Article 66B, § 3.08(b).[9]
 2. Subdivision Regulations
Under Article 66B, a planning commission is to recommend subdivision regulations to the county commissioners for adoption.[10]
Article 66B, § 5.03(a)(1). Among other matters, subdivision regulations may include provisions to "[p]roperly arrange streets in relation to each other and to the master plan" and address the extent the grading and improvement of streets and other ways must be undertaken in advance of plat approval. Article 66B, § 5.03(a)(2)(iii) and (b)(1)(i).
Once the county commissioners have adopted a transportation element for the area and a certified copy of the plan has been filed with the clerk of the circuit court, a subdivision plat may not be filed without the planning commission's approval of the plat. Article 66B, § 5.02(a)(1).[11] Approval of a subdivision plat by the planning commission is considered "[a]n amendment or a detail of the plan" and "[a] part of the plan." Article 66B, § 5.04(b)(1). However, plat approval "does not constitute or effect an acceptance by the [county] of any street . . . shown on the plat." Article 66B, § 5.04(b)(2). *Page 109 
Once a planning commission has begun to exercise control over the subdivision of land under § 5.01, it exercises exclusive authority over plat approval. Article 66B, § 5.07(a).[12]
 3. Reservation of Property for Roadways
The Land Use article also contains a subtitle called "Development of Mapped Streets." Article 66B, § 6.01 et seq.[13] After adoption of the transportation element of the plan, a planning commission may conduct surveys to locate street lines and other parts of the transportation element and create a plat showing the property that the planning commission recommends be reserved for future dedication or acquisition for public streets and any other part of the transportation element. Article 66B, § 6.01(a). Final approval of the plat, however, and the duration of the reservation for streets are decisions reserved to the county commissioners. Article 66B, § 6.01(d) and (e).
The adoption of the plat reserves the property for future taking or acquisition, but does not constitute the opening or establishment of a street or a taking of the property. Article 66B, § 6.01(f)(1) and (2). While a properly-recorded reservation is in effect, a permit may not ordinarily be issued for the development of any part of the property between the lines of the proposed street as platted. Article 66B, § 6.02(a).[14]
The county commissioners may abandon any reservation at any time through adoption of a resolution and certification of the abandonment to the clerk of the circuit court. Article 66B, § 6.01(h). *Page 110 
 4. Repeal Provision
As noted above, Article 66B includes a provision that repeals inconsistent statutes. It reads:
 Except as otherwise provided in [Article 66B], any law or ordinance that is inconsistent with or contrary to the provisions of this article is repealed to the extent of the inconsistency.
Article 66B, § 7.05. A similar provision was initially enacted by Chapter 599, Laws of Maryland 1933. See Article 66B, § 37 (Supp. 1935). In effect, § 7.05 simply codifies the general rule that, when two statutes are inconsistent, the later-enacted measure prevails. SeePiscatelli v. Bd. of Liquor License Comm'rs, 378 Md. 623, 633,837 A.2d 931 (2003).
 II Analysis
You have asked whether the public roads subtitle has been repealed by virtue of § 7.05, the provision of Article 66B that repeals inconsistent laws. You suggested that the authority granted to county commissioners under Article 66B "subsumes many of the public roads provisions in Article 25" and "provides a much more modern method of planning and providing for the transportation needs within a given jurisdiction." You indicated your view that the effect of these provisions has resulted in the repeal of Article 25, §§ 135 — 152 by operation of § 7.05, even though the Legislature did not explicitly repeal those provisions when it enacted Article 66B.
As the Court of Appeals has recently recognized, "[t]racing the entire panoply of related enabling statutes [governing local governments] in Maryland is a tad complex." Casey v. Mayor and City Council ofRockville, 400 Md. 259, 929 A.2d 74 (2007) (discussing interrelationship of Articles 23A, 25, 25A, 28 and 66B of the Maryland Code). Reconciling various statutes is an exercise of statutory construction; thus, the cardinal rule is to effectuate the intent of the Legislature. State v.Ghajari, 346 Md. 101, 115, 695 A.2d 143 (1997). When statutes irreconcilably conflict, the presumed legislative intent is that the later enactment repeals by implication the earlier enactment to the extent of any conflict. Id. However, whenever possible, repeal by implication is to be avoided. *Page 111 Id. The reason is that it is also presumed that the Legislature intended that its enactments "operate together as a consistent and harmonious body of law." Id. quoting State v. Harris, 327 Md. 32, 39; Farmers Merchants Nat'l Bank v. Schlossberg, 306 Md. 48, 61 (1986). Seealso 1A N. Singer, Statutes and Statutory Construction § 23:9 (6th ed. Rev. 2002). Thus, a later enactment should only be viewed as repealing an earlier enactment when there is some express reference to the earlier enactment, there is a "manifest inconsistency" between the two statutes, or their provisions are "so repugnant that they cannot stand together." Dep't of Natural Resources v. France,277 Md. 432, 460, 357 A.2d 78 (1976). In interpreting related statutes, an attempt must be made to give effect to both statutes to the extent that the statutes can be reconciled. Ghajari, 346 Md. at 115.
Some provisions in the public roads subtitle appear duplicative or unnecessary in light of alternative authority.[15] For example, county commissioners have authority to acquire property and open a public road under Article 25, §§ 11A(a)(1)(i) and 25(a).[16] Other provisions of the public roads subtitle are, as a practical matter, anachronistic. For example, even if a county commissioners saw value in appointing disinterested citizens to assess the merits of a proposed road opening or closure, recruitment of examiners may be difficult in light of the cap on compensation at $2 per day.[17]
As outlined above, the Land Use article provides a framework for planning and approval of new roads without reference to the provisions of Article 25. A comprehensive plan adopted under the authority of Article 66B is intended to guide both public and private actions, and is to include a transportation element addressing, among other things, all types of highway and streets. Article 66B, § 3.05. Once the transportation element is in place, "the adoption of *Page 112 
subdivision regulations is required . . . and . . . those regulations are authorized to take into consideration `the avoidance of congestion of population." Bd. of County Comm'rs of Cecil County v. Gaster,285 Md. 233, 245, 401 A.2d 666 (1979). A subdivision plat, including proposed roadways, generally must be approved by the planning commission as consistent with the plan. Article 66B, § 5.02(a)(1). Furthermore, a planning commission can recommend to the county commissioners the reservation of property for future dedication or acquisition for future roads.
However, in our view, it is possible to harmonize the provisions of the public roads subtitle and the Land Use article. Accordingly, we do not conclude that the provisions of the public roads subtitle have been repealed.
For example, the public roads subtitle provides a mechanism under which a person can request the county to undertake the opening, alteration, or closure of a public road. This process could occur independently of any proposed subdivision. On the other hand, neither the approval of a subdivision plat nor a reservation of private property for a future roadway alone automatically results in a road becoming a public roadway. Article 66B, §§ 5.04(b)(2); 6.01(f)(1) and (2); cf.United Finance Corp. v. Royal Reality Corp., 172 Md. 138, 143, 191 A.81 (1937) (mere location of a street on a plat by local government does not, of itself, make the street a public way).[18]
At some point, the county planning commission would be expected to evaluate a plat or proposal for a new or altered roadway for consistency with the county's comprehensive plan. Article 66B, § 3.08. However, nothing in the public roads subtitle would preclude such review. And if the county commissioners agree to an improvement under the public roads subtitle, the end result is a new or altered road that would become part of the county road system. The public roads subtitle also provides a process by which a person may petition to eliminate a road or eliminate a proposed road that might exist only on paper, an option not addressed under alternative statutory provisions.
While there are provisions in the public roads subtitle that appear duplicative or unnecessary in light of alternative authority *Page 113 
available to commission counties, there is neither a "manifest inconsistency" with Article 66B nor are the provisions "so repugnant that they cannot stand together." Cf. Dep't of Natural Resources v.France, 277 Md. at 460. Finally, Article 66B, § 7.05, providing for the repeal of inconsistent provisions, is not itself an express repeal of the public roads subtitle. Cf. Saunders v. State, 8 Md. App. 143,258 A.2d 776 (1969) (general statutory repealer in shoplifting statute, very similar to Article 66B, § 7.05, did not eliminate the crime of larceny from mercantile establishment); see also 1A N. Singer, Statutes andStatutory Construction § 23.8 (6th ed. Rev. 2002). Thus, we cannot conclude that enactment of provisions in Article 66B effectively repealed provisions in the public roads subtitle under Article 25.
 III Conclusion
In summary, while some of the provisions under the public roads subtitle under Article 25 of the Code appear antiquated, in our view, the provisions have not been repealed by the enactment of Article 66B of the Code. Nonetheless, we recommend that the General Assembly evaluate these provisions, as well as other statutory provisions governing county roads, for appropriate modernization.
Douglas F. Gansler
Attorney General
William R. Varga
Assistant Attorney General
Robert N. McDonald
Chief Counsel
Opinions and Advice
[1] The provisions cited include several sections applicable to a single or limited number of counties. Article 25, § 137A (Frederick County — Presumption certain roads closed); § 138A (Allegany County — Authority to open roads for limited purpose); § 139 (Allegany, Garrett, and Washington counties — Condemnation authority). Other provisions provide certain exceptions applicable to one or more counties. You did not request that we address these county-specific provisions.
[2] Most of the subsequent amendments of the public roads subtitle addressed circumstances in individual counties or addressed technical matters such as updating cross-references.
[3] This provision was added by Chapter 582, Laws of Maryland 1957.
[4] The powers of county commissioners with respect to public roads are set out in a number of other statutes. See, e.g., Article 25, § 1
(county commissioners have charge of and control over county roads and bridges), § 2 (control over public roads, streets, and alleys outside municipal corporate limits), § 2A (county commissioners to spend highway dollars for highway projects within municipal corporate limits), § 3(o) (in addition to any other authority, county commissioners authorized to provide for the grading, paving, regrading, repaving, curbing, recurbing, or repairing any road condemned, ceded, opened, widened, extended, or straightened as public property; certain counties exempted); §§ 25(a) and 26 (county commissioners' authority to open, alter, or close any public road; authority to build and repair bridges);see also Article 25, § 11A(a)(1)(i) (county commissioners' authority to acquire property needed for any public purpose) and Annotated Code of Maryland, Transportation Article, § 8-408 (permissible uses of highway user revenues).
[5] The examiners are to receive a formal commission and take an oath to discharge their duties "faithfully and without favor, affection or partiality." Article 25, § 140.
[6] Article 66B was first enacted in 1927 and initially applied only to Baltimore City and the "legislative bodies of cities and incorporated towns . . . containing more than 10,000 inhabitants." Chapter 705, Laws of Maryland 1927. In 1933, the Legislature enacted legislation, patterned after the Standard City Planning Enabling Act and Standard State Zoning Enabling Act, which, among other things, extended both planning and zoning authority to counties and all municipal corporations. Chapter 599, Laws of Maryland 1933; see Article 66B, §§ 10 — 23 (Supp. 1935).
[7] Although counties that have adopted charter home rule under Article XI-A generally exercise planning and zoning authority under the Express Powers Act, Annotated Code of Maryland, Article 25A, § 5(X) rather than Article 66B, the required visions set forth in Article 66B, § 1.01 and the comprehensive plan provisions under § 1.03, including a transportation plan element, extend to charter counties as well. Article 66B, § 1.02(a)(2) and (3).
[8] The 1933 amendments of Article 66B provided for adoption of a master plan that was to guide, among other things, "the general location, character, and extent" of streets and roadways and provide "adequate provisions for traffic." Article 66B, §§ 15 and 16 (Supp. 1935). The required transportation element resulted from major reforms to Article 66B enacted in 1970. See Article 66B, § 3.05(a)(3) (1970);see also Maryland Planning and Zoning Law Study Commission, FinalReport (1969). Among other changes, the 1970 legislation altered the role of the planning commission so that, rather than adopting a master plan, it recommended a plan to the local legislative body for adoption.See Article 66B, § 3.05 (1970).
[9] If the planning commission fails to act on a request within 60 days, it is deemed to be approved. Likewise, if the local legislative body fails to act within 60 days of the submission of a recommendation from the planning commission, the recommendation is deemed approved. Article 66B, § 3.08(c).
[10] Like planning and zoning authority, the original authority of a county to adopt subdivision regulations can be traced back to Chapter 599, Laws of Maryland 1933. See Article 66B, §§ 24 — 30 (Supp. 1935).
[11] The planning commission may delegate approval authority to a zoning administrator or equivalent officer in accordance with nondiscretionary criteria specified by county ordinance. Article 66B, § 5.02(b)(1).
[12] To the extent that the General Assembly had previously enacted statutes governing plats and subdivisions in particular jurisdictions, such power was explicitly transferred to the planning commission. Article 66B, § 5.07(b).
[13] A county's authority under Article 66B to reserve land for future streets also traces back to Chapter 599, Laws of Maryland 1933.See Article 66B, §§ 31 — 33 (Supp. 1935).
[14] A board of appeals may grant a permit if it finds the entire property of which the reserved property forms a part cannot yield a reasonable return if the owner is denied a permit and, after balancing the government and property owner's respective interests, "reasonable justice and equity" require issuance of the permit. See
Article 66B, § 6.02(b).
[15] See, note 2, supra (citing other provisions of Article 25 related to roads).
[16] In a county that has adopted code home rule under Article XI-F of the Constitution, the county commissioners have authority to address these matters under the Express Powers Act. See Article 25B, § 13.
[17] Even if the maximum daily rate prescribed in 1853 was indexed using the Consumer Price Index, its value in 2007 would be $55.37 per day. S. H. Williamson, Five Ways to Compute the Relative Value of a U.S.Dollar Amount, 1790 — Present, www.MeasuringWorth.com.
[18] Of course, approval of a subdivision plat might be conditioned on the dedication of roads as public roadways. *Page 114